Please proceed. Good afternoon. May it please the court, counsel. My name is Debra Nall. I'm here from the Office of the State Appellate Defender on behalf of the appellant Ashanti Lusby. We are here today because the circuit court improperly denied leave to file a successive post-conviction petition that raised a meritorious Miller claim. The state concedes error under People v. Bailey, but the circuit court also erred because Lusby adequately alleged, and the record shows that the sentencing judge imposed a life sentence without considering the Miller factors or making a finding that Lusby was himself permanently incorrigible. To further the interests of both judicial economy and justice, this court should reverse and remand for resentencing, or at the very least, remand for further post-conviction proceedings pursuant to the Bailey error. Montgomery, Miller, Graham, and Roper established that even when juvenile offenders commit terrible crimes, they are categorically less culpable than their adult counterparts. And that's because their brains aren't yet fully developed. And when the only individual who can be legally sentenced to a life sentence for a crime committed when they were juvenile is one who is so irretrievably depraved that they are beyond redemption. The focus for this determination must be on the offender and not the offense. And that determination must be made with the understanding and recognition that juvenile offenders are inherently more likely to change than adults who have committed the same offense. That's exactly why in People v. Holman, our Supreme Court rejected a narrow reading of Miller and instead held that juvenile defendants may not be sentenced to life without parole unless the judge has first considered the Miller factors. And as this court recently recognized in People v. Smalley, Miller applies to discretionary de facto life sentences like Mr. Lusby's 130-year term. But the record in this case shows that the sentencing judge did not comply with Miller. The Miller factors, four of the five, are relevant here. First, prospects for rehabilitation. The record in this case provides that the probation officer believed, he recommended that Mr. Lusby given counseling for anchor management. That is affirmative evidence that Mr. Lusby was capable of being rehabilitated. Yet the sentencing court did not consider that at all. And the sentencing court didn't make an overt finding to the contrary. So that error alone requires reversal and resentencing. But we have more. The second factor, chronological age at the time of the offense and any evidence of the defendant's particular immaturity, impetuosity, and failure to appreciate risks and consequences. Here the sentencing judge did consider Mr. Lusby's chronological age. He was 16 at the time of the offense. And also considered the general notion that youth make, have often show poor judgment. But as Holman held, generally mitigating circumstances related to a juvenile defendant's youth is not enough to comply with Miller. And that's so because as the United States Supreme Court said in Montgomery, quote, adolescence is marked by transient rashness, proclivity for risk, and inability to assess consequences. Here the evidence in the record shows exactly that same transient rashness, proclivity for risk, and inability to assess consequences. And that the act that occurred, if indeed it was Mr. Lusby, which he maintained his innocence at trial. That that was not something that was from an irretrievably depraved person, but that it was something that happened out of a constellation of terrible circumstances. And we know that because first the PSI at the time of sentencing when he was 22 showed that he had a daily marijuana habit. It also showed that he had been expelled in high school in the 10th grade due to what the 1999 PSI described as gangbanging. And most importantly, we have his criminal history, which shows a de-escalation of behavior. So the 1996 offense was in February, the one that we're here for. That happened in February 1996. In August of 1996, Mr. Lusby was prosecuted and convicted as a juvenile for aggravated discharge of firearm. He then was sentenced to the Juvenile Department of Corrections. He was released in 1997. The next offense was, I believe it was a robbery that was committed in 1998. He was sentenced to two years probation in September of 99. And then in, I think it's 2001 or 2002. No, 2001, April 2001. He was arrested for, or convicted of resisting a peace officer, which is the same time that he was arrested in conjunction with this case. He received a $250 fine for that. And then there was one more offense that happened inside the jail. But there was no conviction on that. We don't know details. All of that shows exactly the kind of pattern that we would expect from someone who had a troubled background, who was involved with the peer pressure related to gangs, all of these things. And it shows that he's not the cold-blooded, you know, monster that he was argued to be by the state, and I think found to be without proper findings or without proper consideration of youth, by the sentencing judge. The next factor is involvement in the homicide. That took over everything in this case. And it's understandable, because in 2002, we didn't have the benefit of all the brain science and the social science and the evolution in thought that has happened in really a short time, I think like 15 years. But what we do know, at trial, Mr. Lesby's ex-girlfriend testified that on the night of the offense, he was with two friends, I think they were watching like a porn movie or something, and that they came back after a little while, and they were very stressed out and nervous. We also know a confidential informant told police that Lesby and his friend were out looking to steal a car when they happened upon Ms. Hap's open garage door, and then they happened upon her open door, and things took a terrible turn. That does not evidence a considered plan from the mind of a monster. It evidences stupidity, perhaps anger problems, all of these things that we've seen in so many cases. But it doesn't justify imposition of a life sentence without consideration and a determination that Mr. Lesby is one of those rare, irretrievably corrupt monsters. So the last factor that's relevant here is family and home environment. There's not a lot of evidence in the record about this. But we do have from the PSI that Mr. Lesby, at the time of the PSI, said that he had a close relationship with his family, his parents. He also said they visited him often in jail. The probation officer noted that the jail log recorded no visits. The probation officer was unable to get in touch with Mr. Lesby's family. The PSI also said that Mr. Lesby had two children. The ages, the whereabouts were unknown. His sisters, the whereabouts unknown. The only information that it says about them is that they had criminal offenses. That's likely from the probation officer speaking with the state, not from Mr. Lesby's knowledge. So all of this together, well, also we have that when Mr. Lesby was 10, he moved from Chicago to Joliet. Then he went back to Chicago for a year at the age of 14, and then back to Joliet. So all of this shows the same type of unstable, difficult family environment that was considered as mitigation in Miller, and Graham, and Roper, and Montgomery, and should have been considered as mitigation in this case, but was not. And so for all of those reasons, this case needs to go back for further proceedings. In Montgomery v. Louisiana, the United States Supreme Court acknowledged that it might encounter the rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life without parole is justified. Here, the evidence shows that Mr. Lesby was not that rare person for him that exhibited irretrievable depravity. The offense is separate from the offender. Montgomery also promised that, and again I quote, the opportunity for release will be afforded to those who demonstrate the truth of Miller's central intuition, that children who commit even heinous crimes are capable of change. The circuit court in this case should have granted leave for Mr. Lesby to file his Miller claim. He adequately alleged, and the record shows, that the sentencing judge did not comply with Miller or with Montgomery. Lesby's life sentence therefore violates the Eighth Amendment. And this court should reverse and remand for resentencing, or at the very least, remand for further post-conviction proceedings. And if you have no questions... Okay, thank you. Counsel? Yes. Okay. May I please record, counsel? On a procedural note, because of the input by the state's attorney in this case, under Bailey, that is error. And if I am not mistaken, I believe this court has on a number of occasions declined to address whether or not the petition adequately set forth cause and prejudice, which is what normally, from a denial of leave to file, is the issue presented. The defendant's motion for leave to file a successive petition is state cause and prejudice. This court has declined to make that determination. Basically, if you will, the case is done with that finding. And under the circumstances, making any kind of a ruling on the petition, not so much on the motion, but on the motion as well as on the petition, is kind of like putting the cart before the horse. The trial judge is to be given the first opportunity to make that determination. And even though I know that the trial judge made the determination already, the defendant will have the opportunity to reallege and to try to take and state something further or more or in addition to what has already been done. So I think that with Bailey sitting out there and with the fact that no case in the Illinois Supreme Court has been issued yet saying that the appellate court should take a look at the submission of a petition to see whether or not it should be remanded or not. But based on this court's precedent, this case has to be remanded. Anything that this court were to take and say again would be advisory at best, potentially maybe even directing a finding to the trial judge, which I think would be inappropriate. Having said that, the state nonetheless did make an argument in case this court, this panel were to take and find that what the Supreme Court did in Bailey, which is trying to determine whether or not the relief was a remand or not, looked at cause and prejudice, looked at the petition to determine whether or not it was adequately pleaded. And in this case, if this court takes a look at that, the people have the opinion that the trial judge correctly determined that the petition failed to state cause and prejudice. The cause part, the prejudice part is the one that really you have to focus in, in this case, simply because unlike other cases, in a lot of cases where a handful of a sentence, the trial judge will not comment, will not take and make findings with respect to age or whatever, will just kind of just look at the factors of aggravation, mitigation, and make the determination. In this case, what I want to take and do is, and basically what the entirety, at least anyway of the people's argument is, really focuses on what the trial judge said at the time of sentencing. That is, I think, the key aspect here. And if this court were to determine that it can look at the sufficiencies of the petition, and if this court were to determine that what the trial judge did here in actuality comported with Miller, even though it predates Miller, then there is no basis to take a remand. And what the trial judge said here was, and I'm quoting here from R853 to 855 of the record. All right, well, this is a case that is a very difficult case from the standpoint of the facts of the injuries and the method of murder of the victim. Certainly the defendant's age is a factor at the very least, to the extent that he is not eligible for the imposition of capital punishment based solely because of his age. Because but for his age, under the age of 18, certainly this, these are the types of things, let me put it that way, that I have seen that all attorneys that are in this trial have seen as facts that could be considered capital punishment. But I cannot ignore the fact that Ms. Happ was terrorized and sexually assaulted and humiliated and executed in her own home. And this was clearly a depraved act by you, Mr. Lesby, and it shows absolutely no respect for human life. So it is very difficult for me to consider any limits in this case. It is very difficult for me to see any factors of mitigation. I have gone through the section in mitigation. There are no factors of mitigation that apply. I have gone through the factors of aggravation and those factors that are made that apply, and I sincerely believe that the appropriate sentence is a sentence that will see that this does not occur outside of the Department of Corrections again. This is a choice that you made at a young age, and I know that choices, youthful choices, are sometimes in very, very poor judgment. But this is not one that can be taken back, and this is not one that can be considered minor, and this is not one that can be considered for anything but setting the future of the Department of Corrections. From what I have seen here, from everything that I have seen and heard in this trial, this is a life you chose, a life of carrying weapons, a life of showing no respect for human life, and I am not at all uncomfortable in imposing the maximum sentence of the murder of 100 years. That was what the trial judge stated at the time of sentencing, which also reflected upon the nature of the injuries in this case. And, yes, indeed, I did focus on the injuries significantly in the brief because they are very telling as to what happened. Because what's trying to be done with sentencing juveniles is to make that distinction, to make that distinction between the juvenile whose crime reflects unfortunate yet transient immaturity and the rare juvenile whose crime reflects irreparable corruption. When you take a look at the injuries here, a contact wound to the forehead of a victim, right below the hairline but above the eyebrow. The victim, still alive at the time, could see what was going to happen to her. This was after or close to around the time that there were incised knife wounds or some kind of a sharp object to her neck, included are the fact of all of these substantial genital injuries as well as an injury and a tear to her rectum. I mean, this was a woman who was brutalized. And so when we look at the trial judge's comments in relation to what the evidence showed, what the evidence proved, and you take into account the fact that he did say young, he realized age is something where there's some kind of impetuosity, if you will. But in this case, he found the facts. He found what happened here basically, although not using the words, basically found irreparable corruption of this defendant. Mr. Genetevec, aren't you focusing on exactly what Miller and Montgomery said you're not supposed to focus on? Not solely. That is correct. Okay. That is correct. But what I'm trying to do is in terms of what the trial judge was doing and what he did with respect to the age and with respect to the ultimate finding that he's going to have to take and make, he's going to have to take and make a finding of irreparable corruption. All I'm trying to simply point out is the fact that I think that he's made that finding. Except he didn't make it on the basis of the factors that he's supposed to look at. Well, when we take a look at the factors, the defendant's chronological age and evidence of immaturity, impetuosity, failure to appreciate risk and consequences. We've got his age here of 16. If you look at his acts, I don't think his acts and his prior record, I think if you take a look at his history, even in PSI, there's no showing of any impetuosity or anything here. If you take a look at the family home environment, he claims a close home environment, but nobody visits, even though he's claiming that people visit him all the time. The degree of participation in the homicide and peer pressure. There's no peer pressure here. He's watching a pornographic movie and going out to go steal a car, decided to take and rape and murder somebody. His degree of participation is there. There's no excuse for his degree of participation or what he did. But you don't have any basis in the facts of this case for saying that. It may be that ultimately it's determined that he was irreparably corrupt, but it has to be done on the right basis according to the U.S. Supreme Court. And you're asking us to bypass all of that. Well, how else would you take, with respect to, for example, his involvement, how else would you take and look at that and assess that other than to take a look at what he did? That's the number one factor. Those two decisions said you're not supposed to look at what he did. You're supposed to look at who he is. Who he is in relation to the degree of participation. Who he is in relation to his age. As well as the other factors. Counsel even provides factors, just not his age. The factors that relate to his age. How then does the degree of participation in the offense and the lack of peer pressure, how does that factor in with respect to his chronological age and the determination of irreparable corruption? I don't know. Maybe you need to take this case to the U.S. Supreme Court and ask them. All we can deal with is what they said. Well, I understand. But I guess what I'm trying to take and get to is you're going to have to take and assess what was done here in terms of his age in relation to his age. But when there's nothing there. Again, I just focus on the one. Even on the first one. His chronological age and there is no showing of any kind of impetuosity or anything like that. The degree of participation looks at the degree of what he did. I know, based on his age, there wasn't peer pressure. And on this record, there is evidence and the trial judge heard all this evidence that there wasn't anything like this. So even though he didn't articulate these factors, what I'm saying is I believe that when you look at what he did say, that those factors were in context were considered or were looked at in the trial judge making this determination. How were they looked at? In the sense of he didn't articulate them. It's kind of like it's almost like what he said. Okay. What he said evinces what these factors are. In other words, he looked at the degree of participation. He looked and he basically said it's dangerous. He looked at his age and he talked about impetuosity. He talked about the fact that juveniles make bad decisions for bad reasons because they're not necessarily bad people. But that's not what he found here. That's why I read what he said. So when I say he considered those factors, he didn't list them because they didn't exist. But in essence, what he did do is he basically did address them in his sentence of determination. That's all that I'm saying. Well, that's what I'm not understanding, that what he did was he just made that description that you read, right? Correct. Correct. That doesn't include any of the stuff that this is based on. He considered his age. He considered the fact of the impetuosity. He considered the fact of his participation in the offense. Granted, he didn't say anything about the family. He didn't say anything about the visitation, stuff like that. But as all sentencing hearings go, trial judges will take and say, I've considered the PSI. I've considered everything. I looked at everything. Even though they don't reiterate it, they don't spell it out, it's still nonetheless there. I'm going to read again what you read. Because that's what he said. Well, this is a case of, want the whole quote? Yeah. All right. Well, this is a case that is a very difficult case from the standpoint of the facts of injuries and the method of murder of the victim. It's certain, certainly the defendant's age is a factor at the very least, to the extent that he is not eligible for the imposition of capital punishment, based solely because of his age. Because but for his age, under the age of 18, certainly this, these are the type of things, let me put it that way, that I have seen that all the attorneys that are in this trial have seen as could be considered capital punishment activities. But I cannot, I cannot ignore the fact that Ms. Haft was terrorized and sexually assaulted and humiliated and executed in her own home, and this was clearly a depraved act by you, Mr. Lusby, and it shows absolutely no respect for human life. So it is very difficult for me to consider any leniency in this case. It is very difficult for me to see any factors of mitigation.  There are no factors of mitigation that apply. I have gone through the factors of mitigation, and those factors, there are many that apply, and I sincerely believe that the appropriate sentence is a sentence that will see that this does not occur outside of the Department of Corrections again. This is a choice that you made at a young age, and I know that choices, youthful choices, can be, are not, you know, sometimes, are sometimes a very poor judgment. But this is not one that can be taken back, and this is not one that can be considered minor, and this is not one that can be considered anything but setting your future in the Department of Corrections. From what I've seen here, from everything that I have seen and heard in this trial, this is a life you chose, a life of carrying weapons, a life of showing no respect for human life, and I am not at all uncomfortable in imposing the maximum sentence on the murderer of 100 years. When I read that, and I'm trying to compare it with the United States Supreme Court case, the case that talked about juveniles and sentencing, and the factors that Justice McDavid recited from the Supreme Court's view of how we're supposed to look at juvenile sentencing, I don't know how we can compare that with what they said we're supposed to look at in sentencing juveniles. And those comments by the judge doesn't look like that. The sentencing judge looked at the factors that are supposed to be looked at in juvenile sentencing. I mean, it doesn't comport with those requirements. When you say, well, they're implied, they're implicit with those statements, I'm not getting it. Well, I guess what I do is I look at the factors that are to be considered, the five of them, okay? And when you take a look at what those factors are, and... Well, he talks about the chronological age. He talks about the fact that Budford, the fact that he was 16, this was definitely eligible. He talks about later on, he talks about youth. He talks about the fact that youth makes mistakes, okay, the impetuosity. But what he determined is he found that based on the record in this case, he found that the juvenile, if he were to compare his determination with what the factors are that we know now, he made a determination that this wasn't impetuosity, this wasn't a failure to appreciate right from wrong. He basically found it to be very deliberate. He found it to be very cold-blooded. He found... No mitigating factors. Pardon me? No mitigating factors. No mitigating factors. And he determined that his degree of participation was such. Now, again, I'm not saying that he said anything about the home environment. And I would venture to say that if you look at the judge's findings here, I would venture to say that one would have to take and conclude that even though he didn't say it, did he not basically find that this defendant's prospects for rehabilitation were extremely poor. Now, whether or not there are studies out there, whether or not this is... I am just going off of what the trial judge said and what his findings were, and I think what is very much implicit in his findings, even though he didn't use those words. That's all that I'm saying. In fairness to the trial court, Miller and Montgomery had not been decided at the time of this hearing. So what we're looking for, I guess, in what he said, what you've been reading, is that somehow he was able to forecast that this was going to be a problem or something that he needed to consider. What we would be saying if we were to reverse this would be that, in spite of his best effort, he was not able to foretell what the Supreme Court was going to require, and so it has to go back so that he can or she can make the decision based on the factors that the Supreme Court has now said they have to follow. I understand that the factors that Miller set out, stuff like that, the trial judge did not have the benefit of that at the time. And I'm not suggesting that he had a crystal ball or anything like that either. I'm just trying to take and go from what his words are and compare them to what the factors are. Well, I think the problem with what you're saying is that you're asking us to infer that he made these considerations that he didn't know he needed to make. And he could very well consider all these things and still come to the same conclusion. But we don't. No, I understand. I agree with what Your Honor is saying. That's all I'm doing. But he couldn't divine the future, could he? No. None of us can. No. And I can't, speaking of divining the future, I cannot divine the futures of what this court is going to do with this, with how it's going to handle this in light of the Bailey decision. So with that, very much to me the tea leaves. But if you have any questions, I'll be happy to respond. All right. Thank you, Your Honor. I will try to be quick. I just have a few points. First, in regard to Bailey, I believe counsel is speaking about Peeble v. Munson. This case is in a different procedural posture, because here this court has de novo review of our first issue. In Munson, there was only a Bailey error. So this court does have the power to conduct de novo review of the entire record and to advance the case for re-sentencing directly pursuant to Peeble v. Daly. Second, regarding cause and prejudice, there's absolutely cause under Montgomery, which held that Miller stated a new substantive constitutional law that applies retroactively. That right there is cause. In terms of prejudice, there's prejudice because McLean at least stated the gist of a constitutional claim that his due process rights were violated when the court did not consider the Miller factors. And I also acknowledge that the court could not have been psychic, but I think this record clearly shows the court did not consider those factors. And at the very least, in Bailey, the Supreme Court said, the court must determine whether defendant has made a prima facie showing of cause and prejudice. If the defendant has done so, the court will grant leave for the petition to be filed. There is, at the very least, a prima facie case here of prejudice. Third, turning to the sentencing judge implicitly complied with Miller point by the state. I know this court recognizes that I'm going to explicitly say what Miller said, which is, quote, nothing that Graham said about children was crime specific. So as this court eloquently said, the court was not supposed to focus on what he did, but who he is. And here, the court focused almost exclusively on what he did. It started during the trial when there was a Boos hearing, and he, I'm sorry, he was forced to wear a sunbelt even though there was no Boos hearing because he was already predetermined to be a monster. And I'm not arguing that. I understand it's not up, but it is something for us all to keep in mind because it comes up again at the sentencing hearing. I'm not going to read the whole sentencing hearing, but I do want to point out that the very beginning of the hearing when defense counsel objected to the high volume of victim impact letters, when the court said, and I'm at R812, the court says that he, okay, so his decision can't be based on the passion or prejudice of the letters. They'll base this decision on the facts of the case and not on those letters. And he says, although they're helpful, they're certainly to a certain degree enlightening, but I think they're probably more helpful for those who suffered the loss than they can be for the court because I know I can't, I know I can't, I can't base my decision on the passion and the grief of those who have been left behind. That was the beginning of the sentencing hearing. We then heard from, you know, it was terrible. I acknowledge that this was a terrible offense. But then, thank you, everything that was considered that counsel discussed was only considered through this lens of what was appropriate at the time, that this was all aggravation, it's just that things have changed and now we know that it has to be considered as mitigation. We also know that there is evidence of peer pressure. When there's a gang activity, that's like automatic peer pressure, and I know that that's something that's difficult for a lot of us who don't live in that world to understand, but it's a fact, and it's been documented, and it needs to be considered. Well, this judge was looking at the classic mitigation and aggravation factors that are classic factors in the sentencing hearings. I'm sorry, I didn't hear. These are classic aggravation and mitigation factors that judges will get from the sentencing hearing, and again, this predates all the more cases dealing with sentencing juveniles. Correct. So, I guess that concludes. I again ask this court to reverse and remand directly for resentencing to save conserved judicial resources, or at the very least, to remand for further post-conviction proceedings, and I would urge, if this court chooses that route, to advance for the second stage so that he can have counsel appointed because he certainly stated the gist of the claim. Ms. Knoll, I have one question. I have made a note here that People v. Davis, which is an Illinois Supreme Court case, said that if the decision was made before Miller was decided and the first post-conviction petition was denied before Miller was decided, that Miller constitutes cause of prejudice. That's true. Are you familiar with that case? I am familiar with that case. I believe that's cited in both the opening brief and certainly the reply brief. I'm a little bit concerned about that in light of Holman. I am sure that it does still constitute cause of prejudice, but, yeah, that is what Davis holds. Thank you. Thank you very much. Well, we'll take this matter under advisement. I'll take a recess.